Good morning, your honor. It's nice to be with you again. George Bibikos on behalf of Greenwood Gaming and Entertainment doing business at Parks Casino. Judge, may I have one minute for rebuttal, please? Sure. Thank you. Your honors, Parks requests that the court reverse the district court's order compelling Parks' other law firms to disclose its privileged communications based on the doctrine of judicial estoppel because, number one, that doctrine is not an exception to Pennsylvania privilege law. Number two, it shouldn't be applied in a manner that operates as an exception to Pennsylvania privilege law. Isn't the real issue here whether the district court abused its discretion? That's really the issue. And how did the district court abuse its discretion here when the representations made by Eckert that they didn't represent a party in litigation was basically wrong, was it not? It would be an abuse of discretion if you get past the threshold question whether the doctrine can apply as an exception under Pennsylvania law. If we're going to that inquiry, Judge... Why can't it? You're saying a judge could never go down this road? What we're saying is, what Parks is saying is, the doctrine of judicial estoppel under federal common law, the federal court should not be using that federal common law doctrine as an exception to a state law that is developed by the Pennsylvania Supreme Court and general assembly. But the contrary there. And when it comes to judicial estoppel, we have to, don't we? The federal, the court's interest and not necessarily, that's not defined by state law. That is correct, Your Honor. In a diversity case, when the case is up on appeal, federal common law on judicial estoppel should apply. What we're saying is, in this instance, where you're taking away the privilege of a non-party recipient of the subpoena in a diversity case, the court should not be using that federal doctrine in order to circumvent the privilege because it's not recognized as an exception to the state privilege law. Well, but I think as Judge Restrepo intimated, are we going to say that never could be the case? I mean, we're preserving the integrity of the district court. The district court is preserving its own integrity. And, you know, in an egregious situation, whether or not this is egregious, we're going to categorically say couldn't apply. I'm surprised that you would go for that broad statement, which is. I would say the courts are, this circuit in particular, is loathe to make that broad categorical statement. And that's not necessarily what we're saying. What we're saying is, in this particular circumstance. All right. So you're saying there's an abuse of discretion. Correct, Your Honor. That's where you get into, you have to evaluate how judicial estoppel was applied. I'm not suggesting that. How was this an abuse of discretion? It's very simple. To set the stage, Parks is a non-party recipient of a subpoena for documents. And the subpoena might as well have said, give us all your privileged documents. That subpoena was quashed. There were discovery requests directed to Eckert, who is a party defendant in a law firm of Parks. And another subpoena issued to another law firm. Okay. Same kind of thing. I'm paraphrasing to make the point. It basically said, give us your privileged documents. When Parks entered and asserted the privilege, the magistrate judge in the first instance, Sua Sponte, raised judicial estoppel. And not based upon any representation you had made. Correct, Judge McKee. We had not made any prior statements. In fact, if you look at the record, we have a collection of no fewer than two dozen statements by Parks. Yeah, you weren't even a party at that point. At that point, Parks wasn't even involved. But then it came back down and you had the opportunity for a hearing. We did. And then the magistrate judge kind of sort of blessed the decision that he made in the first instance and went back to the district court. Are you saying there's a lack of sufficient evidence regarding Parks' participation in this? What exactly are you saying? In part. And the first line of defense is, number one, the courts are pretty clear in this circuit that if no court has adopted any kind of prior inconsistent statement, then the game is over. Again, that's not necessarily categorical, but that is the general rule in this circuit. We don't have a situation in which any court adopts, first of all, Parks didn't make an inconsistent statement, but to the extent it's attributable from Parks' law firms to Parks, the court never adopted it. These were statements in joint case management plans and answers to complaints and so on and so forth. Very preliminary stuff. So is Parks bound by counsel's representations? Absolutely not. Not in this circumstance, Judge. Eckerd is a defendant in a case against another client. If Eckerd had made a statement or equivocated on a statement and so forth, it was not at the Parks' direction. Parks cannot be bound by it in this case. It's not the type of judicial admission, and we cite a few cases on that in our brief. Was Eckerd speaking for Parks? Beg your pardon, Judge? Was Eckerd speaking on behalf of Parks? No. Eckerd was speaking on behalf of itself. Eckerd is a defendant in the case below. Parks is a third-party recipient of a subpoena, which, by the way, was quashed, ironically, by the And here's where we get Judge Rendell into the abuse of discretion, partly. Then you have judicial estoppel interposed on the same privilege based on a statement we never made. But you knew they were representing you at the time, and you must have known that maybe the statement wasn't totally accurate. Did you have a duty to speak up and say, wait a minute, they were representing us, let there be no mistake? They were not representing Parks in this case at all. They are a party defendant, period. What about the underlying litigation? Party defendant. The underlying litigation in the District Court, Eckerd is a party defendant, not representing Parks. I have that privilege. Well, no, but the statement that was made in this case had to do with the extent to which Eckerd was representing Parks in the Commonwealth Court case. And the statement was made, we are not representing a party, an adverse party, in litigation. And the statement was kind of cute, because the import was, we're not representing Parks in that litigation, because they would be an adverse party. Now, it turns out, as explained later, well, we meant you hadn't entered our appearance as representation for a party in that litigation. But should Parks have said, wait a minute, Your Honor, just to let it be clear, they were representing us, but we weren't a party, and they hadn't entered their appearance. Parks had no knowledge of that statement at all. All right, you're saying Parks wasn't- Parks wasn't involved until well after that statement was made. And again, you have to look at it through the lens of Parks. Parks entered as a non-party recipient of subpoena, and from the moment it entered the fray, represented to the district court, excuse us, yes, they represent us in various matters, including in matters that are adverse to the plaintiff in this underlying case. And yes, we are asserting the privilege, and yes, we're telling them to assert the privilege too. Under privileged law, under state law, it doesn't matter what the lawyers think. It matters what the client thinks. And if the client is making the representation that says, oh yeah, they're representing us in whatever other matters, that's our privilege. We get to assert it, and they have a duty to assert it on our behalf. That doesn't necessarily mean they have to be representing us in this case. It just means that we have an attorney-client relationship preexisting, and that the privilege belongs to Parks. And to use judicial estoppel, just to finish the point, to use judicial estoppel when Parks never made any inconsistent statements and has always maintained the same position, that is an abuse of discretion. Because the final point, if the magistrate, judge, and district court made any finding, it was that these are privileged materials subject to privilege law, and the only way you get to disclose them is to superimpose judicial estoppel. What should the remedy for the, I won't call it judicial estoppel, but what should the remedy for the, to use Judge Mendel's term, kind of representations that were made be? Clearly, there was representations that had to have been relied upon. It's a different issue. Had it been relied upon, it would have been very misleading. The court was, I think, very justifiably offended. What should the remedy be? Because in my mind, it boils down to the remedy, not the misconduct on the part of the accurate. But the remedy for that. May I answer, Judge McKee? Please, please. The remedy, Your Honor, it's a good point. Because I think at the end of the day, we can cut through the chaff and get right to the remedy. And the problem with the remedy, and this may not only be an abuse of discretion, but it could be an error of law as well, the judge had an obligation to consider other non-judicial estoppel remedies first. Well, he did, and he rejected them for reasons I don't understand at all. But he rejected them. That makes two of us, Judge. But there's obligations to take the rules into consideration, take statutory provisions into consideration, and then see if that is up to the task in the words of, I think it's Judge McKee's opinion. Then, the other problem you have is the remedy imposed here actually exacts a violation of Rules 26 and 45 by requiring the disclosure of privileged information. And those rules, on their face, immunize privileged information from discovery. So when you get down to it, there has to be a more appropriate remedy. And from Parks' perspective, honestly, the remedy, as long as it isn't give our documents to them, there is another remedy here. Maybe there's an admission on the part of Eckert for purposes of trial or liability. Maybe there's some other remedy that can be tailored. And you could even call it a judicial estoppel remedy and put Eckert to the task and say, Eckert, you're stuck with this statement. And you can't use it in this litigation to avoid liability. I think that would be a situation that is more equitable. Because what you have now is, okay, Parks didn't make any statements, didn't really do anything wrong, yet Parks is the privilege holder and its documents are gone. And that's why we're here. And we really shouldn't be. And I'm well over my time. Thank you. Thank you very much, Judge. Good morning. Good morning. Robert Tintner for the defendants in the case, Eckert and the two Eckert attorneys. I'll focus on the remedy, because I think that the firm take contrary positions or not? Well, we're not here to argue the facts, but I will say no, because we never – well, they're my statements. Well, let me start with they were my statements. They're doing it again. They were my statements. They were in an answer with affirmative defenses. They were in two affirmative defenses. It was our obligation to prove them at the time of trial. We never got to that point. Well, reduced to its essence, did you take different positions with respect to your client? We do not believe that we did. Did you take different positions with respect to your client in Virginia and Pennsylvania, yes or no? No, we did not. We never – well, let me clarify. Perhaps the simplest way I can explain it is we never said we didn't represent Parks Casino, okay? That's always been out there. Everyone knew that. That's never been the issue. The issue was whether we represented Parks Casino in litigation adverse to the plaintiff. That was the statement, okay? Maybe it was cute. I think Judge Rendell said it was cute. That may be fine, but the remedy for that – I'm not sure it's fine, actually. Well – It misleads the court. Well, we were not intending to mislead the court. We didn't argue it in a summary judgment motion. Well, it ended up not misleading the court because the court didn't rely upon it. Correct. And therefore, I think judicial – But we weren't – but the intent of it – let me explain. The intent of it was to differentiate between a direct adversity conflict under Rule 1.7 and a positional conflict. Maybe we will end up being wrong and we cannot establish that, although we still think that that is a valid defense, but that was the point of it. It was never to mislead the court. It was never to be relied upon. It was never filed in a motion. It was never argued. And I also would point out that we did have an argument in front of Judge Zapparito. This was all explained. We – it's in the transcript, in the record, where we explain the difference between representing Parks Casino so that the privilege would apply and making the statement that we made in an affirmative defense on what is the difference between a positional conflict and a direct adversity conflict. Do you claim attorney-client privilege on Parks documents, though? Yes, because we absolutely – Eckert absolutely represents Parks Casino. There's no question that the privilege applies, and even Judge Zapparito and the district court acknowledged that. They're arguing somehow the judicial estoppel, which was sua sponte, raised by the court, somehow would eviscerate that privilege. It would only eviscerate the privilege – You represent Parks Casino. I'm sorry? So you're saying – you're admitting you did represent Parks Casino in Pennsylvania. Eckert absolutely did represent Parks Casino before it represented the plaintiff. It represented Parks Casino in several matters during the time, and it continues to represent Parks Casino today. There's no dispute about that. And did you take contrary positions in different states? No. In Virginia, the only issue was whether the plaintiff's devices were legal. We took contrary positions about legality of their devices because in Virginia there's no gambling. In Pennsylvania, obviously, there's gambling, and it's regulated. That's why there's a difference in position, and we have acknowledged that. We never disputed that. But let me very briefly – the remedy. The remedy, if in fact this Court finds the judicial estoppel applies, should be to stop Eckert from making the statements. We offered that to the Court because we did not believe that eviscerating the privilege was the appropriate remedy. Making what statements? Stop you from making what statements? The allegedly inconsistent – the statements that the Court took issue with. I'll say that. The Court should find that you did, in fact, represent them. That's what you're saying. In litigation adverse to Palm, we never disputed that we, in fact, represented Parks. So just to clarify what the statement was, we would be a stop from taking that position. And frankly, Eckert would live with that. I mean, this is, by the way, three years after that statement, the affirmative defense was made. A lot has changed. A lot has changed with – What else could Eckert live with in terms of a remedy? Well, that would be the appropriate remedy for judicial estoppel. You asked what the appropriate remedy. There was never any motion to compel before this filed. There were never any discovery abuses or sanctions. It's a very extreme remedy when you look at the context of the case. Eckert answered every discovery request except for one. And they asserted a privilege and they filed a motion for protective order. Isn't that what litigants should do? What is that one? Turn over all of your privilege communications with Parks Casino. It's kind of like saying, well, except for that, Mrs. Lincoln, how did you enjoy the play? Well, that is in fact the – first of all, it's not relevant. You know, not that we have to get into that. It's not relevant to the case. Whether Eckert had a conflict in its representation is a separate issue. It has nothing to do with its communications with a non-party. That point has been made repeatedly in all of our motions. They don't need to see privilege communications in order to make their arguments. They have plenty of non-privilege communications that they will make that say that we took basically positional – you know, we took positions that are in conflict and have jeopardized what they're claiming. So we understand that. But that goes to the merits. That has nothing to do, Your Honors, with this discovery dispute. And we would respectfully request that you reverse the decision of the district court. Thank you. Thank you. Whenever you're ready. Good morning, Your Honor. Dennis Whitaker. I'm here today representing Hawk McEwen at SNSCAC, a non-party recipient of a subpoena from plaintiff's case of Maddock. I want to – I want to briefly address – I'm not quite sure why this seems to be getting short shrift. As the district court correctly pointed out, in a diversity case, Pennsylvania law applies with regard to privilege. Pennsylvania does not recognize judicial estoppel as an exception to the attorney-client privilege. That alone should be determinative of the case here. The district court, the magistrate judge – The federal courts do recognize judicial estoppel, right? I understand that. But not – But Pennsylvania – They recognize judicial estoppel. The distinction is Pennsylvania law applies as to the privilege and Pennsylvania doesn't recognize it. So the district court and the magistrate judge abuse their discretion by applying judicial estoppel to eviscerate Park's attorney-client privilege. They further abuse – Beyond that, even assuming you get by that – And frankly, I don't see how you can. It's contrary to Pennsylvania law. That's the law that applies. And the issue isn't federal courts can't apply judicial estoppel. Federal courts can apply judicial estoppel in the manner which Mr. Tintner suggested, which is to say to Eckert, you can't deny that you represented Park's. That would be – I don't want to say it is here, but under certain circumstances, that would be a correct application of it. However, the district court – Throw that doctrine aside for a second, because I don't think we need to get into that. And because there was no reliance here, I'm not sure it even applies. But we can deal with this without getting into the nuances of judicial estoppel. It seems to me it's pretty clear that there was a misrepresentation made about the nature of Eckert's representation. How do you remedy that? Frankly, Your Honor, I disagree with that. You're not the one who made the misrepresentation? We disagree with that. And I would point out to you – But you are not the one the court found made the misrepresentation. No, we're not. I was not upset about it, but you did. But we are – Actually, the district court didn't even mention us. The magistrate judge essentially tarred HMS with the same brush. And I would suggest to Your Honors – How did that happen? Are your documents involved? Are your privileged documents? There is – Let me commend to you, because I'm running out of time here quickly. Take your time. I would suggest to you that in the joint appendix, you take a look at the answer that HMS filed to the submission of the Commonwealth Court document to the magistrate judge. That's at 710 to 715. HMS and the specific document that was submitted to the district court or to the magistrate judge is at 633 to 643 of the joint appendix. And Mr. McEwen's declaration is at 647 to 653. And what that lays out is that in November of 2019 – I think I have that date right – Yes, November of 2019, Parks was – I'm sorry. Eckert was involved in representing Parks with regard to casino concerns about the impact of the plaintiff's skill games on the casinos in Pennsylvania. There's never been a dispute that that was going on. At that point, Parks' chair reached out to Mr. McEwen from our firm and asked him to participate in forming a white paper with the other casino groups. This was – the Commonwealth Court litigation initiated by Palm was ongoing at that point, but it was just Palm and the City of Philadelphia and Pennsylvania State Police and Department of Revenue. Parks was not involved at that point. Palm, at some point, moved for – filed an injunction against the State Police. The casino group, which at that time included both Ballard Sparr representing Penn National, Hawk McEwen, my firm, and Mr. McEwen representing Parks, and Eckert representing Parks. The amicus brief was filed. Prior to filing the amicus brief, Palm reached out to Eckert and said, we think you have a conflict. Eckert said, well, we don't think we do because we have an advanced conflict waiver and we have an ethical screen. Not – given that, though, Eckert elected to not be a signatory to the amicus brief and not to enter their appearance in Commonwealth Court. But they worked on the amicus brief, right? Yes, they did. As part of the casino group, as did Mr. McEwen from HMS and the counsel from Ballard Sparr. That's all laid out in the joint appendix. And what that says is that Eckert's statement that they didn't represent Parks in litigation adverse to Palm is an objective statement of fact. They didn't enter their appearance. It was no secret that Parks was involved when Mr. McEwen from our firm argued the amicus brief. Counsel for Eckert was there and sat at counsel table. So it wasn't a surprise to anybody that Eckert was involved. The statement that's causing all the controversy here was an objective statement of fact. Maybe they should have said, we're not counsel of record, but it's capable of being read in a manner that does not invoke judicial estoppel. But the problem here is, from us, we're a holder of Parks' document, as is Eckert. The problem for us is judicial estoppel's being invoked to eviscerate the privilege of a non-party, Parks, and that's contrary to Pennsylvania law. If you want to invoke judicial estoppel against Eckert, then I would suggest that the proper remedy is what Mr. Tintner argued. Otherwise, the entity being punished for alleged abuses to the court is a non-party privilege holder. We understand that. OK, thank you, Your Honor. Thank you. Thank you, Your Honor. Let me introduce the court. My name is Michael Martynich-Sauder, and I'm here for Pace-O-Matic, Inc. This is one of the strangest cases I've ever seen. It boggles the mind. When I read the brief, I had to go back over again, because I'm thinking to myself, I didn't read what I just read. The judge couldn't have done that. It just boggles my mind. Why not simply, as Mr. Bibicus suggested, simply find, as a matter of fact, that there was a misrepresentation, don't call it judicial estoppel, but it was the kind of conduct that a court has the inherent power to address, and find, as a matter of fact, that there was conflicting representation by Eckert at a point that they represented Park at the same time they represented P-O-M, forgetting about technicalities or injuries of appearance or not. Take that as a finding of fact, and that goes to the ultimate issue in the P-O-M litigation in terms of the breach of the trust. The court apparently had a problem with that because they said it would resolve the dispute, but so what? I think there's two answers to that, Judge. The first answer is articulated in the district court's opinion, which is, at least in the district court's view, it was required by case law to select the most tailored remedy. Well, case law does... I'll read you from Montrose. Page 778 of Montrose. We hold the party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by the court. I can read from G.I. Holdings. In our circuit, judicial estoppel is generally not appropriate where the defending party did not convince the district court to accept its disposition. And then we go on to say that the judicial estoppel doctrine is aimed at protecting the integrity of the court. It's not aimed at protecting a particular party. What the court here did flies in the face of all of that. So why not just find... Yes, there was representation of POM and Park at the same time in a way that contradicted... interfered with the interests of POM. Therefore, POM wins the substance of that litigation. And then you deal with remedy. Is it a dollar remedy, which may be appropriate under Rule 11? Then maybe they're stopped, as was suggested, from denying the fact, which is the same thing, for purposes of liability. But the district court apparently was concerned that that would go to the merits of the case. And for the life of me, I just don't understand why that's a problem. That's like saying I'm not going to grant summary judgment because that goes to the merits of the case. I don't understand that. Understood, Judge. And I'd like to respond to a couple different components of that. One relates to this issue of cases addressing whether there has been prior reliance by a court. But I want to turn quickly to one point on the remedy issue. And I think one concern that the court should have about the remedy is that the district court... One point of clarification. Neither the magistrate judge nor the district court applied judicial estoppel against Parks because of Eckert's misrepresentations. Eckert made its misrepresentations, or inconsistent positions, maybe is a better way to put it, and had judicial estoppel applied against Eckert because of its own inconsistent statements. But it meant that Parks' communications, which were privileged, were disclosed after the fact. Yes, Judge. So it did punish Parks. Well, but the district court found that Parks itself had made a separate set of inconsistent statements. One set of statements... I did not see that. And I saw in the district court opinion a footnote crediting what the magistrate judge found. And I couldn't find any statement in the record to support that. Well, so the two statements... I mean, Parks wasn't a party to this litigation in the district court. Well, so the two statements that the district court looked at were first in June of 2020, Parks filed a motion to quash in the Middle District of Pennsylvania. And in that filing, it took the express position that Eckert represented Parks with respect to the Commonwealth Court case. Okay. Then six months later, in the Commonwealth Court litigation, Eckert... Or, I'm sorry, Parks filed a filing denying that Eckert represented it in the Commonwealth Court case. Well, they hadn't entered an appearance and they hadn't intervened at that point. But there was no representation to the district court. And that's what we're talking about. The integrity of the district court. Parks didn't say boo in connection with this case in the district court, did it? That's what we're talking about. Well, it did take a position... It took one position in the district court and a contrary position in the Commonwealth Court. What position did it take before Judge Saperito and Judge Wilson? Did it come in and say something in that case? Yes. It did? Through Eckert? No. It was represented by a separate law firm. I think Mr. Bibikos, but he can correct me if I'm wrong. They filed a motion to quash the subpoena. Of course they did. Of course they did. There was a third-party subpoena from Pace-O-Matic to Parks Casino. Let me ask you a question. Yes, ma'am. I'm not sure what's going on here. There's a sua sponte ruling, judicial estoppel, that the district court comes up with. Instead of saying, okay, we're going to redact these things and give you what you want, give you everything that's not privileged. At some point, you made the representation that you really weren't out to get their privileged documents. Do you really want us to say... You're lawyers. Do you really want us to say that every time you speak to your client and later on, a court finds that there's some misrepresentation made, that that attorney-client privilege that was the basis of your client talking to you goes away? Do you really want us to do that? Why can't this case... Why can't we just redact these documents and send them over? This seems to me like just a Palm v. Parks thing. I don't... I just... I don't get it myself. I just don't get it. Your Honor, I guess what I would say in response to that is, I mean, absolutely not, to state the obvious. I don't think... Well, that's what's going to happen. What's going to happen? They'll turn over wholesale all of Parks' documents and here forever, we'll have this ruling that, you know, you better not really disclose stuff to your lawyer because later, if your lawyer says something that a court thinks is inconsistent, you're in trouble. And I guess our read of the opinion and we may read it differently is that at least... And I think it's clear in the magistrate judge opinion, although, Judge, as you pointed out, there's a footnote in the district court opinion agreeing with that, is that Parks is not... But this is totally based upon Parks'... Parks' reprehensible conduct is the basis for judicial estoppel. Well, there's... there's a basis for applying it against Eckert and a basis of applying it against Parks. Okay. What's the basis for applying it against Parks? What did they do that was so bad that their privilege should be thrown out? So they took directly contrary positions on... in two separate litigations, not in the same litigation, but in two separate litigations simultaneously as to whether or not Eckert represented them in the commonwealth court case. But didn't everybody know the extent of the representation of Parks? This is all very clear. And it's made clear in the hearing in front of the magistrate judge. I don't know that he fully grasped... And there was... I don't think the statement was made about a positional versus a direct adversary, but it seems to me it's made pretty clear, you know, we don't... what it means. Everybody knows the extent of Parks' representation here. There's not anything here that's hidden, is there? Well, I think there's... I think there's two answers to that question. One is that this discovery dispute, as Mr. Tintner pointed out, I think, has been going for years now. And so what PASEMATIC has known has evolved over time when the discovery... They're going to prove it in your case, right? You're going to prove it in this case. What's the status of this case in the district court? Well, we're still in discovery. We've been sort of trying to conduct discovery. The parties have been trying to conduct discovery that we can conduct without this court's resolution of the intercollegiate... Well, I don't think you take depositions and you ask people questions. You know, I mean, the district court seemed to think you were blindfolded, but I don't know. It seems like you take depositions, find out, get to the heart of the matter. But nobody's hiding the extent of representation here. Well, at this point they're not judged, but at the beginning of this litigation they absolutely were. And it wasn't until this discovery dispute began that PASEMATIC had, you know, insight into the fact that its law firm, its former law firm now, was representing parks adverse to it. But wait a minute. You filed a lawsuit saying they were. You filed a lawsuit saying that there was a conflict and they were representing adversely. You certainly had facts on which to base that, didn't you? Well, at the time the lawsuit was filed, PASEMATIC was aware of other conflicted activity. So, for example, I think it was in September of 2019, Eckert filed on behalf of parks a number of lawsuits against establishments  PASEMATIC machines. And that was the first time PASEMATIC realized that there might be a conflict. Right. And now you're finding out more. And so this is the whole basis for the case, which is the way the case is going to get resolved. Correct, Judge. But at the time that some of these rulings were occurring, not all of the facts were known to PASEMATIC. Let's go back to the remedy. You said earlier there's a narrowly tailored remedy. Is eviscerating the attorney-client privilege and the work product privilege a narrowly tailored remedy? Well, I would say it's the narrowest available remedy. It's the narrowest? What I think is stopping them from asserting one of the two inconsistent positions is the narrowest remedy. And I'm not sure that they... Let's go there. Do that. Well, so I think they asserted two positions, right? There is an attorney-client relationship and there is not. And so the narrowest remedy would be to stop one of those. I think the district court chose one and the appellants wished the district court had chosen the other. But the district court didn't choose one because he thought that would resolve the merits of the underlying lawsuit that you filed. Again, I don't see a problem with that. We don't. Well, I mean, certainly if there were like a directed verdict or a default judgment, you know, piece of matter would not oppose... Yeah, you win. We certainly don't oppose winning. But I think what the district court did there, I mean, certainly the result of its judicial estoppel finding is, you know, otherwise privileged documents being produced. But narrowly what it said is Ecker, Parks, HMS are estopped from asserting that there's an attorney-client relationship. And because they couldn't assert that prerequisite to the privilege applying, you know, as a legal matter, the documents aren't privileged because they haven't carried their burden. That is exactly the problem. So all the non-parties documents get disclosed. Privilege, everything gets disclosed. Even though they're a non-party. That's what boggles my mind here. And a doctrine which when you look at the cases where we've discussed that doctrine, it absolutely doesn't fit. But yet you take this doctrine that doesn't fit and you apply it in a manner that penalizes the innocent party. It's like you've got two kids and you know that your youngest son stole the cookies and you call your oldest son and say you're grounded because your brother stole the cookies. You didn't know the cookies were being stolen but you're grounded. That's what this comes down to. You hit the wrong party with a penalty. I think in our view and as I read the district court and magistrate judge opinions, I don't think that we would view parks as an innocent party. I completely agree that Can you refer to the appendix page where the district court made findings as to parks' specific role in this? I don't have my brief right in front of me. I found where they made a reference but it was pretty oblique. I will admit that the district court's reference is oblique. It was a footnote referring to the magistrate judge. But the magistrate judge similarly I found. I think JA823 to 824 is the discussion that at least we read as finding   through HMS in the Commonwealth court case made a separate set of inconsistent or false statements about parks in the Commonwealth court case. I don't know where you're coming from. Thank you.     in this case I would like to say that I would like to say that I would like to ask if you have any suggestions of the appropriate remedy? In our brief, Judge, we recommended that if the court was going to overturn the remedy that an appropriate remedy would be entry of default judgment at least as to the breach of fiduciary duty claim. Default judgment? How do we get to a default judgment on the breach of fiduciary duty based on that? Judge, the case law, at least I think it was Crystal Cadillac recognized that an appropriate remedy, at least under some circumstances is the narrowest remedy is simply preventing them from taking inconsistent positions. And that's what the district court I think tried to do here. Crystal Cadillac is problematic. Again, it's judicial estoppel. There was not reliance there, but it was bankruptcy. And we would have to do it in a manner that did not take what is irrelevant in a bankruptcy context and blow out the doctrine of judicial estoppel and non-reliance in a context which is not bankruptcy. But again, I don't think the inherent authority to fashion an appropriate remedy here. And just one other point with regard to the remedy, I guess our one concern and I think this is echoed in Crystal Cadillac is that the remedy does send a message to future litigants and the remedy that's being proposed by the appellants would leave Eckert in precisely the same position as if it had truthfully represented the facts from the perspective    So I think the remedy would be appropriately tailored as opposed to this incredibly inappropriate non-tailored application to a third party. I see my time is out unless the court has other questions. Thank you. Thank you Judge. I think your honor unless there are questions one factual point in appendix 636 the dreaded commonwealth court paper that the magistrate judge relied on to say parks somehow behaved badly here's what all of it says by the way written by HMS in a response to a motion to disqualify on behalf of half a dozen casinos parks included the various casino intervenors litigation filings in this case were drafted by a  that the judge relied on evidence to say there's no attorney client relationship I think Judge Reddendale said it best everybody knows what's going on then that's the definition of a clearly erroneous finding you have to set that aside thank you thank you one minute thank you counsel thank you I'll take this matter and advise it and circle back to you thank    you counsel thank you all thank you all